UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MEDIX STAFFING SOLUTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 C 6648 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| DANIEL DUMRAUF, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Medix Staffing Solutions, Inc. ("Medix") is committed to ensuring that Defendant Daniel Dumrauf ("Dumrauf") does not do any work for his new employer, non-party ProLink Staffing ("ProLink"), within 50 miles of Medix's Scottsdale, Arizona, office pursuant to a covenant not to compete (the "Covenant") Dumrauf signed while working for Medix. Dumrauf has provided a sworn statement that he has relocated to Ohio and that he does not work in Arizona, with the exception of a few instances while he was relocating to Ohio, but not performing any Arizona-related work. Medix is not satisfied with these assurances and believes that Dumrauf violated and continues to violate the Covenant. So this case goes on, and Dumrauf now moves to dismiss it [26]. Because the Covenant, on its face, restricts Dumrauf from taking any position with another company that engages in the same business as Medix, without regard to whether that position is similar to a position Dumrauf held at Medix or otherwise competes with Medix, the Covenant is unenforceable and the Court grants the motion to dismiss.

**BACKGROUND**[1]

Dumrauf began working at Medix in Scottsdale, Arizona, on March 7, 2011 as Director of Business Operations. In January 2012, Medix promoted him to West Coast Regional Director. In January 2013, Dumrauf became the Director of Medix Scientific. As Director of Medix Scientific, Dumrauf was responsible for Medix's sales and recruiting strategy within the pharmaceutical, biotechnology, and medical device industries.

Dumrauf and Medix entered into an Employment At-Will, Confidentiality, and Non-Compete Agreement on March 7, 2011. On December 11, 2012, in consideration of his continued employment, Dumrauf executed an Employee Confidentiality/Non-Compete Agreement (the "Agreement"). The Agreement included the following Covenant Not to Compete:

> 2.3 Covenant Not to Compete. Medix and Employee agree that the nature of Employee's employment with Medix will place Employee in a close business and personal relationship with the Customers of Medix. Therefore, both during Employee's employment with Medix and for a period of eighteen (18) months following the termination of Employee's employment with Medix for any reason, Employee shall not, within a radius of 50 miles from any Medix office(s) where the Employee performed services as an employee of Medix, directly or indirectly, own, manage, operate, control, be employed by, participate in or be connected in any manner with the ownership, management, operation or control of, any business that either: (1) offers a product or services in actual competition with Medix; or (ii) which may be engaged directly or indirectly in the Business of Medix.

Doc. 23, Ex. A.

On August 10, 2017, Dumrauf resigned from his position with Medix. The same day, he sent an email to Medix V.P. of Sales Jared Jarecki and Medix Director of People and

---

[1] The facts in the background section are taken from Medix's First Amended Complaint and are presumed true for the purpose of resolving the motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

Performance Michael Ceretto informing them of his departure and his acceptance of a position with ProLink overseeing its Healthcare Division's operations.  He stated that his new role will involve some client interaction, though minimal.  Dumrauf noted in the email that ProLink is based in Cincinnati, Ohio, and that 90% of his activity would be in Ohio and Kentucky.  He also noted that he would be relocating away from the Scottsdale area by the end of 2017.

ProLink, a direct competitor of Medix, has an office in Phoenix, Arizona, which is less than fifty miles from Medix's Scottsdale, Arizona, office.  Since leaving Medix, Dumrauf has periodically worked out of ProLink's Arizona office.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits.  Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor.  *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).  To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); see also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

ANALYSIS

I.      **Enforceability of Covenant Not to Compete**

Dumrauf moves to dismiss the complaint arguing that the Covenant is overbroad and unenforceable. Dumrauf argues that the Covenant is unenforceable because it is a blanket prohibition on engaging in any activity for a competitor. He also argues that the Covenant would result in an undue hardship on him and that Medix has not shown a sufficient legitimate business interest in enforcing the Covenant. Medix argues that the Court cannot decide reasonableness of a covenant not to compete at the motion to dismiss stage, and that even if the Court were to reach the merits, the Covenant is reasonable.

Under Illinois law, covenants not to compete are disfavored and held to a high standard. *Cambridge Eng'g, Inc. v. Mercury Partners 90 BI, Inc.*, 879 N.E.2d 512, 522, 378 Ill. App. 3d 437, 316 Ill. Dec. 445 (2007). A covenant not to compete is only enforceable if its terms are "reasonable and necessary to protect a legitimate business interest of the employer." *Id.* (quoting *Lawrence & Allen, Inc. v. Cambridge Human Res. Group, Inc.*, 685 N.E.2d 434, 441, 292 Ill. App. 3d 131, 226 Ill. Dec. 331 (1997)). While reasonableness is a question of law, a court cannot determine it in the abstract but must take into account the unique circumstances of each case. *Id.* (citing *Eichmann v. Nat'l Hosp. and Health Care Servs., Inc.*, 719 N.E.2d 1141, 1143, 308 Ill. App. 3d 337, 241 Ill. Dec. 738 (1999). These unique circumstances include "the hardship caused to the employee, the effect upon the general public, and the scope of the restrictions." *Id.* Furthermore, the employer must demonstrate that the "full extent of the restraint is necessary for protecting its interests." *Id.* (citing *Health Prof"ls, Ltd. v. Johnson*, 791 N.E.2d 1179, 1192, 339 Ill. App. 3d 1021, 274 Ill. Dec. 768 (2003)). Although an employer faces a heavy burden to ultimately prevail, courts will only find such covenants facially invalid

in "extreme cases." *Abbott-Interfast Corp. v. Harkabus*, 619 N.E.2d 1337, 1343, 250 Ill. App. 3d 13, 189 Ill. Dec. 288 (1993). "[U]nless the covenant is patently unreasonable, the parties must be given a full opportunity to develop the necessary evidentiary record." *Allied Waste Servs. of N. Am., LLC v. Tibble*, 177 F. Supp. 3d 1103, 1110 (N.D. Ill. 2016).

Here, the Covenant purports to bar Dumrauf from "directly or indirectly, own[ing], manag[ing], operat[ing], control[ing], be[ing] employed by, participat[ing] in or be[ing] connected in any manner with the ownership, management, operation or control of," any company in actual competition with Medix or any company directly or indirectly engaged in the Business of Medix. Doc. 23 Ex. A. The Business of Medix is defined as "the business of providing staffing and recruiting options for clients and candidates across the professional services, life sciences, healthcare and information technology industries." *Id.* The Covenant, in essence, bars Dumrauf from being employed by any company that also works in the same fields as Medix within 50 miles of Medix's Scottsdale office whether that company is an actual competitor or not. Furthermore, the types of employment the Covenant bars him from taking with those companies extend beyond roles that were similar to those he held at Medix to any position whatsoever at other companies in the industry. Dumrauf argues that this would bar him from even working as a janitor at another company. While that example is a bit far-fetched, the Court sees no language in the Covenant that makes it an inaccurate statement of its prohibitions. Regardless, the Covenant clearly would prevent Dumrauf from taking any number of more plausible roles at another industry player, no matter how far removed from actual competition with Medix. Such a prohibition is unenforceable. *See Stunfence, Inc. v. Gallagher Sec. (USA), Inc.*, No. 01 C 9627, 2002 WL 1838128, at *7 (N.D. Ill. Aug. 12, 2002) (finding a covenant not

to compete unenforceable where it did not limit its scope to activities similar to those the employee performed for the original employer).

Medix argues that the prohibited employment is not so broad as this, asserting that the employment provision is limited by the clause "in any manner with the ownership, management, operation or control," Doc. 23 Ex. A, and, therefore, the assertion that Dumrauf could not work for ProLink even as a janitor is incorrect. This argument fails for two reasons. First, this purported limiting clause does not operate to limit the types of employment subject to the Covenant. Even in the most generous reading of the Covenant, this clause only limits the scope of the prohibition to employment by the ownership, management, operation or control of any competitor. To the extent this limitation makes sense, it would still cover all types of employment. However, it is clear from the grammatical structure of the Covenant that employment is not limited by the clause "in any manner with the ownership, management, operation or control." The only limitation on the scope of the employment prohibition is the types of companies for whom Dumrauf is prohibited from working: competitors of Medix and companies engaging in the Business of Medix. The unambiguous meaning of the Covenant is that Dumrauf may not work for any company in the same business as Medix in any capacity whatsoever.

Second, even if the Covenant only related to positions in ownership, management, operation or control, it would still be overbroad as there are numerous positions that could fit under such a requirement that are entirely non-competitive. *See Cambridge Eng'g*, 378 Ill. App. at 452 (An employer cannot prevent an employee from working for a competitor "in an entirely noncompetitive capacity."). Additionally, there are positions that fit under that restriction that are competitive with Medix but in no way relate to the work Dumrauf did while at Medix.

6

Without some connection to the work he did at Medix, this restriction cannot possibly serve to protect a legitimate business interest of Medix and is in essence an impermissible restriction on competition *per se*. *See Stunfence, Inc.*, 2002 WL 1838128, at *7 (covenant not to compete unenforceable where the activity restriction is not tailored to activities similar to those performed by the employee during his employment). Thus the Covenant is so broad that it is unreasonable on its face and unenforceable. There is no factual scenario under which it would be reasonable; therefore, allowing additional discovery or delaying disposing of this case until summary judgment would be a futile exercise. This is an "extreme case" where dismissal at the motion to dismiss stage is permissible and appropriate.

Medix also asserts that the Court should find the Covenant reasonable because Dumrauf was a high level employee and therefore, a broader ban is appropriate. In support of this argument Medix cites to Massachusetts case law. These cases do not save the Covenant, even if the Court were bound to follow them. Basically, the Massachusetts cases state that employees who had access to a broader range of confidential strategic business information may be subject to broader covenants not to compete than lower-level employees. This is not a controversial idea and is in line with Illinois case law that that requires a covenant to be tailored to protect the legitimate business interests of the employer. *N. Am. Paper Co. v. Unterberger*, 526 N.E.2d 621, 624, 172 Ill. App. 3d 410, 122 Ill. Dec. 362 (1988) (restrictive covenants that are not tailored to protectable business interests are not enforceable). The fact that an employee is higher-level may justify broader restrictions if that is necessary to protect these legitimate interests. However, it will never justify a limitless restriction such as the one in the present case.

Dumrauf also argues that the Covenant is unenforceable because it would result in an undue hardship on Dumrauf were the Court to enforce it and because Medix has not shown a

7

sufficient legitimate business interest to justify the Covenant. Because the Court finds that the limitless scope of the activity restriction alone dooms the Covenant, it need not reach these arguments. However, the Court notes that while it would be Medix's burden to ultimately prove these elements to prevail in this matter, Medix is not required to do so at the pleading stage. But this issue is moot and the Court declines to consider it further.

## II. Modification of Covenant

Medix argues that if the Covenant is not enforceable, then the Court should modify it rather than invalidate it, and that such modification cannot be done without a more fully developed factual record. Courts may slightly alter an agreement to reflect the intent of the parties rather than completely invalidating them when possible. *Weitekamp v. Lane*, 620 N.E.2d 454, 461–62, 250 Ill. App. 3d 1017, 189 Ill. Dec. 486 (1993). But, where it involves a covenant not to compete whose provisions are so broad as to be a ban on competition *per se*, courts should refuse to enforce or modify the agreement. *Stunfence*, Inc., 2002 WL 1838128, at *7 (citing *Eichmann v. Nat'l Hosp. & Health Care Servs., Inc.*, 719 N.E.2d 1141, 1149, 308 Ill. App. 3d 337, 241 Ill. Dec. 738 (1999)). As discussed above, the Covenant here is a broad ban on competition, and, like the employer in *Stunfence*, Medix had the opportunity to draft an appropriate restrictive covenant, failed to, and "now must live with their decision not to do so." *Id.*

Medix cites one case in support of its contention that the Court should modify the Covenant if it is not reasonable as written. In *Saddlers Row, LLC v. Dainton*, an Illinois appellate court reversed the circuit court's denial of a motion for a preliminary injunction where the circuit court found that an otherwise enforceable restrictive covenant was unenforceable because the covenant's geographic scope was overbroad. 2012 IL App (2d) 120941-U, ¶ 13, *as*

*supplemented on denial of reh'g* (Apr. 23, 2013). The appellate court found that the circuit court should have "blue penciled" the agreement to revise the geographic scope from 75 miles to 42 miles, rendering it enforceable. *Id.* at ¶ 14. In support of this holding, the appellate court relied on established Illinois case law that clearly states that when the purpose of a restrictive covenant is reasonable, but the geographic area is not, courts may limit the geographic area in order to "accomplish the purpose of the covenant." *Id.* (quoting *Total Health Physicians, S.C. v. Barrientos*, 502 N.E.2d 1240, 1243, 151 Ill. App. 3d 726, 104 Ill. Dec. 580 (1986)). This does not support, let alone mandate, rewriting the activity scope of a restrictive covenant to make it enforceable. Illinois case law in fact requires the Court not to do so when the scope is so broad as to be patently unfair. *Eichmann*, 719 N.E.2d at 1149 (Courts should avoid modifying substantially unfair restrictive covenants.); *see also Dryvit Sys., Inc. v. Rushing*, 477 N.E.2d 35, 39, 132 Ill. App. 3d 9, 87 Ill. Dec. 434 (1985) (holding that the trial court properly declined to modify a restrictive covenant that included a broad geographic restriction and "no attempt to reasonably limit the [activity] restrictions"). Therefore, the Court finds that the Covenant is not eligible for modification.

## CONCLUSION

For the foregoing reasons, the Court grants Dumrauf's motion to dismiss. Because the Court finds that the Covenant is unenforceable on its face, additional opportunity to amend the complaint would be futile. Therefore, the dismissal is with prejudice and the Court terminates this case.

Dated: April 17, 2018

_____
SARA L. ELLIS
United States District Judge